Filed 2/24/21  P. v. Simmons CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>THEO L. SIMMONS,<br><br>Defendant and Appellant. | C089678<br><br>(Super. Ct. No. 16FE008671) |

A jury convicted defendant Theo L. Simmons of twice robbing a pharmacy with his codefendant D.C., and found defendant used a firearm for the first robbery.  On appeal, defendant argues the trial court erroneously admitted a portion of his jail visit conversation into evidence, in violation of Evidence Code section 356.[1]  He further

---

[1]  Undesignated statutory references are to the Evidence Code.

1

argues that he received ineffective assistance of counsel because his attorney failed to request an instruction on the lesser included enhancement of the personal use of a deadly weapon other than a firearm. Defendant contends these errors taken together rendered his trial fundamentally unfair under the Fourteenth Amendment. We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

*The First Robbery*

One afternoon in December 2015, defendant and D.C. entered a pharmacy and jumped over the pharmacy counter. Defendant thrust a gun into the pharmacy technician's side and pushed her around the pharmacy, demanding certain drugs. The gun was silver, appeared to be metal, and looked real. Because the technician thought the gun was real, she felt afraid. She gave defendant and D.C. the medicine and they left in a waiting vehicle.

D.C. told law enforcement that defendant had used a small, silver semiautomatic handgun during the robbery, which the driver of the getaway car had handed to defendant prior to the robbery. Although D.C. did not touch the gun, hear it cocked, or see it loaded, he believed defendant's gun was real based on the size of the gun's barrel and his familiarity with real firearms and BB guns. It appeared to him to be a .25- or .22-caliber handgun.

While discussing this case on a recorded jail phone call, a visitor asked defendant if he had a gun, and defendant responded, "Yup." Defendant's firearms expert was unable to tell from the surveillance footage of the robbery whether it was a real gun or a fake gun, such as an airsoft, BB, or pellet gun. The detective also could not determine whether the gun was real or fake from the footage. The pharmacist and pharmacist technician said the gun appeared real but could not tell whether it was a real gun or a BB gun.

2

*The Second Robbery*

Two months later, in February 2016, defendant and D.C. robbed the same pharmacy by again jumping over the counter and demanding drugs. Although the other males in their getaway car provided defendant and D.C. with a black BB gun prior to the robbery, defendant and D.C. did not use any gun during the crime. The police found their abandoned getaway car with an imitation firearm or BB gun inside.

*Uncharged Robberies*

In the two months after the February robbery, defendant and D.C. robbed two more pharmacies, with a fake gun in the first instance and with no weapon in the second. The police apprehended D.C. after their last robbery and he confessed to all four robberies and named defendant as the other individual who committed the December and February robberies. D.C. ultimately pleaded guilty to both robberies at issue in this case.

*Procedural History*

The People charged defendant with four counts of second degree robbery (Pen. Code, § 211), two counts arising from the December robbery and two counts arising from the February robbery. The People further alleged defendant personally used a firearm in the first robbery. (Pen. Code, § 12022.53, subd. (b).) At trial, defendant's defense was that the gun used in the first robbery was not a firearm as defined by Penal Code section 16520, subdivision (a). The jury found defendant guilty on all counts and found the firearm allegations true. The court sentenced defendant to 14 years in prison, comprised of the midterm of three years for count one, 10 consecutive years for the firearm enhancement to count one, one consecutive year for count three, three concurrent years for count two, 10 concurrent years for the firearm enhancement to count two, and three concurrent years for count four.

**DISCUSSION**

## I.     Admission of Partial Recorded Conversation

Defendant argues the court abused its discretion by admitting only a portion of his jail phone call to the jury, violating the rule of completeness (§ 356). The People contend this claim is forfeited by failing to make a specific objection under section 356. Assuming the claim was adequately preserved, they contend the trial court did not abuse its discretion and any error was harmless. We find defendant's claim is cognizable on appeal and find no abuse of discretion.

### a. *Procedural Background*

Before trial, the People sought to admit part of the recording of a jail phone call between defendant and an unknown visitor, where they discussed the December robbery. The entire recording was as follows:

Visitor: "Are they going to keep you here for the rest of your time?"

Defendant: "I ain't sentenced yet."

Visitor: "Hum?"

Defendant: "I did not get sentenced yet."

Visitor: "So what your lawyer told you that they are talking 21 years or [unintelligible] at your last case or your last court?"

Defendant: "What? What?"

Visitor: "I got ears, nigga."

Defendant: "Water to my ears?"

Visitor: "[Unintelligible]. Wrap your head around, boy. Did you say -- I said, nigga, now what did I just say? What your lawyer told you?"

Defendant: "Yeah. If I get five years, it is doubled up because I got a strike plus I had -- I got the loaded gun."

Visitor: "Oh you had a gun?"

Defendant: "Yup."

4

The People argued that the court should admit the last three lines, beginning with "I got the loaded gun," and offered a jail intelligence officer to provide the relevant context of their conversation. Defendant first objected to the admissibility of the entire tape as more prejudicial than probative under section 352. He also argued the conversation "should be opened up fully in the event that this communication needs to be put in evidence by the prosecution." The court clarified, "But your position would be if the tail end of it comes in then that entire exchange right there needs to come in; is that right?" Defense counsel responded in the affirmative.

The court took the matter under submission and, after renewed argument on the issue, the court found only the last two lines were admissible: the visitor's question, "Oh you had a gun?" and defendant's response, "Yup." The court found that the question and answer as to whether defendant had a gun was "distinct" from the previous discussion regarding sentencing exposure. The court concluded that "neither Evidence Code Section 352 nor Evidence Code Section 356 which is the rule of completeness" required exclusion of the tape nor "inclusion of any prior portions of the conversation."

### b. *Sufficiency of the Objection*

"An objection is sufficient if it fairly apprises the trial court of the issue it is being called upon to decide. [Citations.] In a criminal case, the objection will be deemed preserved if, despite inadequate phrasing, the record shows that the court understood the issue presented. [Citations.]" (*People v. Scott* (1978) 21 Cal.3d 284, 290; see *People v. Scott* (2015) 61 Cal.4th 363, 402 [trial court's statement admitting evidence as more probative than prejudicial preserved defendant's objection, even though defendant only objected that the evidence was cumulative under section 352].)

The record shows that defendant sought to admit the full tape for context in the event the court found at least part of the tape was admissible. The court understood that defendant made objections in the alternative, under both sections 352 and 356, and specifically referenced the rule of completeness under section 356 when issuing its

ruling. (Cf. *People v. Scott, supra*, 21 Cal.3d at p. 290 [objection sufficiently preserved even though counsel made no specific constitutional reference and cited no authorities].) Thus, defendant's claim under section 356 is preserved for appeal.

### c. *Abuse of Discretion*

Defendant contends had the jury heard defendant's prior statements about his sentencing exposure, they might have concluded his affirmative response that he had a gun referred to the charges in this case, rather than being an admission he actually had a gun during the robbery. As a result, defendant argues the jury was misled and he was prejudiced. We cannot agree the trial court abused its discretion here.

Section 356 provides: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

The purpose of section 356 "is to prevent the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed. [Citation.] Thus, if a party's oral admissions have been introduced in evidence, he [or she] may show other portions of the same interview or conversation, even if they are self-serving, which 'have some bearing upon, or connection with, the admission . . . in evidence.' [Citations.]" (*People v. Arias* (1996) 13 Cal.4th 92, 156.) We review the trial court's determination of whether to admit evidence under this provision for abuse of discretion. (See *People v. Pride* (1992) 3 Cal.4th 195, 235.)

"Application of Evidence Code section 356 hinges on the requirement that the two portions of a statement be 'on the same subject.' " (*People v. Vines* (2011) 51 Cal.4th 830, 860, overruled on other grounds in *People v. Hardy* (2018) 5 Cal.5th 56, 103-104.) Here, as the trial court concluded, the two portions of the statement are not on the same

subject. Defendant and the visitor were discussing defendant's sentencing exposure in this case in light of the firearm enhancement. They were not discussing whether defendant was, in fact, armed with a firearm. When the visitor interjected to ask whether defendant actually had been armed, this was a new subject of conversation. Although section 356 prevents us from " 'draw[ing] narrow lines around the exact subject of inquiry' " (*People v. Zapien* (1993) 4 Cal.4th 929, 959), because the last exchange between defendant and the visitor marks an abrupt shift of subject, the final exchange can be considered independently without creating a misleading impression of the subject addressed. Under these circumstances, the court was well within its discretion to limit the recording to the last two lines and admit only that portion into evidence.

## II.    Lesser Included Enhancement

Defendant next argues that his attorney's failure to request a jury instruction on the personal use of a deadly or dangerous weapon enhancement (Pen. Code, § 12022, subd. (b)), a lesser included enhancement of personal use of a firearm (Pen. Code, § 12022.53, subd. (b)), constituted ineffective assistance of counsel.[2] He contends that defense counsel's failure to request the lesser included enhancement had no rational tactical purpose and prejudiced defendant. We disagree.

" 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome. [Citations.] A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's

---

[2]  A trial court has no sua sponte obligation to instruct on lesser included enhancements. (*People v. Majors* (1998) 18 Cal.4th 385, 410-411.)

actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel. [Citations.] If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. [Citation.]' [Citation]." (*People v. Gamache* (2010) 48 Cal.4th 347, 391.)

With respect to enhancements, an all-or-nothing choice on enhancements, as opposed to offenses, does not distort the factfinding process, because the jury will only consider the enhancement allegations once the defendant is found guilty of the underlying offense. (*People v Majors, supra*, 18 Cal.4th at p. 410.) Thus, there is no risk the jury will convict solely to avoid letting the defendant go free. (*Ibid.*)

In this case, defendant did not dispute that he had a gun. Rather, he argued the People failed to meet their burden to prove the gun was a firearm, rather than a BB gun or pellet gun, beyond a reasonable doubt. A pellet gun or BB gun is not a firearm, but is a deadly or dangerous weapon within the meaning of Penal Code section 12022, subdivision (b). (*People v. Montalvo* (1981) 117 Cal.App.3d 790, 797.) Thus, it is possible that counsel made a tactical decision to pursue an all-or-nothing" strategy, hoping the jury would find the People failed to prove that the gun was a firearm. Given the choice between a one-year enhancement or no enhancement if the People did not prove their case, counsel may have reasonably opted for the latter.

Consequently, while defense counsel's gamble may not have ultimately paid off, we cannot find that this approach defies satisfactory explanation.

## III.    Cumulative Effect of Errors

Having rejected defendant's claims of individual errors, we reject defendant's claim of cumulative error. (*In re Reno* (2012) 55 Cal.4th 428, 483.)

## DISPOSITION

The judgment is affirmed.

                                                 /s/
                                       RAYE, P. J.

We concur:

     /s/
DUARTE, J.

     /s/
RENNER, J.